IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISON

| | | |
|---|---|---|
| KNIGHT WALL SYSTEMS, INC., | § | Civil Case No._____ |
| **Plaintiff**, | § | |
| | § | |
| v. | § | **JURY DEMAND** |
| | § | |
| PRECISION WALL SYSTEMS, INC., | § | |
| **Defendant**. | § | |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Knight Wall Systems, Inc. ("Plaintiff" or "KWS"), by and through its undersigned counsel, brings this Complaint against Defendant Precision Wall Systems, Inc., DBA Gridworx ("Defendant" or "Gridworx") and alleges as follows:

**NATURE OF THE ACTION**

1.      This action arises under the Patent Act, 35 U.S.C. §§ 1 *et seq*.

2.      Plaintiff KWS designs, manufactures, and sells thermally isolated rainscreen solutions.

3.      KWS is the exclusive owner of United States Patent No. 9,732,518 (the "'518 Patent") entitled "System and Methods for Thermal Isolation of Components Used". (Ex. 1.)

4.      Defendant Gridworx manufactures, sells, uses and offers for sale at least four cladding systems and methods having thermal isolation of components used, specifically, but not limited to, the SKR (Saw Kerf Rotational), UKR (Undercut Kerf Rotational), ULF (Undercut Large Floating), and UXF (Undercut XLarge Floating) systems (collectively, the "Accused Products"), which actions infringe KWS' '518 Patent.

5.      Gridworx is actively advertising and offering for sale the Accused Products and instructing consumers on the use of these products.

1

**PARTIES**

6.      Plaintiff Knight Wall Systems, Inc. is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at 2401 E 6th Street, Deer Park, Washington 99006.

7.      Upon information and belief, Defendant Precision Wall Systems, Inc. DBA Gridworx is a corporation organized and existing under the laws of the State of Texas, with its principal place of business and registered agent located at 10980 Alder Circle, Dallas, Texas 75238.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This action arises under the Patent Act, 35 U.S.C. §§ 1 *et seq*., and presents federal questions arising under the patent laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.      This United States District Court for the Northern District of Texas has general and specific personal jurisdiction over Defendant because, directly and through intermediaries, Defendant has committed acts within the District giving rise to this action and is present in and transacts and conducts business in and with residents of this District and the State of Texas.

10.     Plaintiff's causes of action arise from Defendant's contacts with and activities in this District and the State of Texas.

11.     Defendant has committed acts of infringement of the '518 Patent within this District and the State of Texas by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products claimed by the '518 Patent.

12.     Defendant, directly and through intermediaries and customers, makes, uses, sells,

offers for sale, imports, ships, distributes, advertises, promotes, and otherwise commercializes and instructs infringement of the '518 Patent in this District and the State of Texas. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and derives substantial revenue from goods and services provided to residents and businesses located in this District and the State of Texas.

13.    This Court has personal jurisdiction over Defendant because Defendant is registered with the Texas Secretary of State to do business in Texas, has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this District, and, on information and belief, specifically as a result of, at least, committing patent infringement within Texas and this District. This Court has personal jurisdiction over Defendant, in part, because Defendant does continuous and systematic business in this District, including by providing infringing products and services to the residents of the Northern District of Texas that Defendant knew would be used within this District, and by soliciting business from the residents of the Northern District of Texas. Accordingly, this Court's jurisdiction over Defendant comports with the constitutional standards of fair play and substantial justice and arises directly from Defendant's purposeful minimum contacts with the State of Texas.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) because Gridworx resides in this District and has a regular and established place of business and has committed and continues to commit acts of patent infringement within this District.

## FACTUAL BACKGROUND

### A.  Knight Wall Systems and the '518 Patent.

15.    KWS is a leading designer and manufacturer of innovative rainscreen solutions for commercial and residential buildings. KWS' products improve building energy efficiency by

reducing thermal bridging and enhance moisture management by creating drainage planes behind exterior cladding.

16.     On August 15, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 9,732,518, entitled "System and Methods for Thermal Isolation of Components Used" ("the '518 Patent"). (Ex. 1.) The '518 Patent names Scott Croasdale and Douglas James Knight as inventors.

17.     KWS is the exclusive owner by assignment of all rights, title, and interest in the '518 Patent, including the right to sue for and recover damages for past, present, and future infringement.

18.     The '518 Patent is valid and enforceable. The '518 Patent remains in full force and effect.

19.     The '518 Patent discloses and claims systems and methods for reducing thermal bridging in wall assemblies by thermally isolating metal components. Specifically, the '518 Patent addresses the problem of heat loss through metal fasteners and brackets in wall systems by using insulating plates (made from materials such as ceramics or polymers) that are placed between metal components to prevent direct metal-to-metal contact.

20.     The claimed invention includes an isolator plate adapted to be placed between a wall stud and a fastening member, where the isolator plate consists of thermal insulating material with lower thermal conductivity than the metal components, is sized to be approximately coextensive with the fastening member, includes openings for receiving fasteners, and includes positioning structures (such as tabs or hooks) that attach the isolator plate to the fastening member for easier installation.

21.     The '518 Patent system improves the overall thermal resistance (R-value) of walls

by minimizing heat transfer through conductive metal elements and are particularly useful in wall constructions using metal framing with insulation such as rigid foam boards or mineral wool.

**B. Gridworx and the Accused Products.**

22.    Gridworx designs, manufactures, markets, offers for sale, sells, uses and distributes cladding attachment systems and rainscreen solutions for commercial and residential construction ("the Infringing Activities").

23.    Gridworx and KWS are competitors within the same industry and since at least 2025 have been in competition to win the same bid for a project.

24.    Gridworx manufactures and sells at least four cladding systems that infringe the '518 Patent: the SKR System, the UKR System, the ULF System, and the UXF System (collectively, the "Accused Products").

25.    The Accused Products are cladding attachment and support systems that include thermal isolation components designed to reduce thermal bridging between metal fastening components and building structures, in the same manner as the systems claimed in the '518 Patent.

26.    Gridworx is not licensed under the '518 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '518 Patent whatsoever**.**

**C. The Project.**

27.    Plaintiff provided a sales estimate to the subcontractor, Galindo & Boyd Wall Systems (the "Subcontractor"), to provide material goods which utilize the '518 Patent to be used by the Subcontractor in completing the Terrell State Hospital in Terrell, Texas (the "Project").

28.    KWS estimated the Project to supply at least $800,000 in gross revenue were it awarded the contract to supply the materials.

29.    Upon information and belief, Gridworx also provided a sales estimate to the

Subcontractor, of which the Accused Products would be supplied to the Subcontractor for installation on the Project.

30.     Upon information and belief, Gridworx was awarded the contract to supply the Accused Products, and the Project is set to begin no later than January 2026.

**D.  Pre-Suit Notice and Negotiations.**

31.     Plaintiff has complied with the notice requirements of 35 U.S.C. § 287 at least as early as July 29, 2025. (Exs. 2-3.)

32.     On July 29, 2025, KWS contacted Gridworx in writing regarding its Infringing Activities and the '518 Patent. (Ex. 2.) This correspondence placed Gridworx on actual notice of the '518 Patent and informed Gridworx that the Accused Products infringe one or more claims of the '518 Patent.

33.     On September 5, 2025, Gridworx responded to KWS claiming non-infringement. (Ex. 4.) Despite receiving actual notice of the '518 Patent and KWS' infringement allegations, Gridworx continued to make, use, offer for sale, sell, and import the Accused Products without authorization.

34.     On October 20, 2025, KWS again contacted Gridworx in writing regarding its Infringing Activities and provided additional information concerning the '518 Patent and the Accused Products' infringement. (Ex. 4.)

35.     On November 5, 2025, Gridworx responded to KWS asking for a licensing proposal. (Ex. 4.) Gridworx's request for a proposal demonstrates Gridworx's acknowledgment of KWS' patent rights and Gridworx's awareness that its activities implicated the '518 Patent.

36.     On November 7, 2025, KWS responded to Gridworx with a licensing proposal and response deadline. (Ex. 4.) Gridworx failed to accept KWS' proposal or cease its Infringing

Activities by the deadline.

37.    On November 12, 2025, Gridworx responded to KWS rejecting KWS' licensing proposal and again asserting that Gridworx does not infringe any claim of the '518 Patent. (Ex. 4.) In this response, Gridworx stated that "the information available to Gridworx indicates that Gridworx is not practicing any claim of any Knight Wall Systems patent" and that Gridworx's "investigation and that of [its] outside counsel does not identify any Gridworx product that these rights would relate to." Despite this assertion, Gridworx has continued to make, use, offer for sale, sell, and import the Accused Products, not ceasing its Infringing Activities, or making any substantive modifications to the Accused Products or enter into a license to use and offer for sale the Accused Products.

38.    On November 14, 2025, KWS filed suit in the United States District Court for the District of Colorado. (Ex. 5.)

39.    On November 21, 2025, Gridworx expressed their opinions of and defenses to the complaint filed in the District of Colorado and provided an inadequate settlement offer that KWS rejected. (Ex. 6.)

40.    Despite having actual knowledge of the '518 Patent since at least July 29, 2025, and despite multiple opportunities to resolve this dispute through licensing negotiations, Gridworx has continued and continues to willfully infringe the '518 Patent by making, using, offering for sale, selling, and importing the Accused Products.

## WILLFUL INFRINGEMENT

41.    Gridworx's infringement of the '518 Patent has been willful.

42.    Gridworx has had actual knowledge of the '518 Patent since at least July 29, 2025, when KWS provided Gridworx with detailed notice of the patent and explained how the Accused

Products infringe.

43.     Despite having actual knowledge of the '518 Patent, Gridworx has continued to make, use, sell, and offer for sale the Accused Products without authorization from KWS.

44.     Gridworx engaged outside patent counsel to evaluate the '518 Patent and participated in licensing negotiations with KWS, demonstrating Gridworx's awareness of the patent and understanding of the infringement issues.

45.     Despite this knowledge and opportunity to cease its Infringing Activities or obtain a license, Gridworx rejected KWS' licensing proposal and has continued its infringing conduct.

46.     Gridworx's post-notice infringement demonstrates willful disregard of KWS' patent rights, entitling KWS to enhanced damages under 35 U.S.C. § 284.

## COUNT I

### Patent Infringement Under 35 U.S.C. § 271(a)

47.     Plaintiff realleges and incorporates by reference its allegations in the preceding paragraphs as though fully set forth herein.

48.     Gridworx has directly infringed and continues to directly infringe one or more claims of the '518 Patent, including at least Claim 1, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

49.     Gridworx has directly infringed and continues to directly infringe the '518 Patent by making, using, offering for sale, selling, and/or importing into the United States the Accused Products without authority from KWS.

50.     Specifically, Gridworx has:

   a.   Made the Accused Products, which embody the claimed inventions of the '518 Patent;

b.  Used the Accused Products in testing, demonstrations, and marketing activities in a manner that directly infringes the '518 Patent;

c.  Offered the Accused Products for sale to customers nationwide; and

d.  Sold the Accused Products to customers, contractors, and distributors.

51.     Each of the Accused Products incorporates thermal isolation systems that include isolator plates adapted to be placed between metal wall studs and metal fastening members, where the isolator plates consist of thermal insulating material, are sized to be approximately coextensive with the fastening members, include openings for receiving fasteners, and include positioning structures that attach the isolator plates to the fastening members.

52.     The Accused Products satisfy each and every element of one or more claims of the '518 Patent, literally and/or under the doctrine of equivalents.

53.     Gridworx has directly infringed the '518 Patent with actual knowledge of the patent since at least July 29, 2025, when KWS provided Gridworx with written notice of the '518 Patent and informed Gridworx that the Accused Products infringe the '518 Patent.

54.     Despite this actual knowledge, Gridworx has continued to make, use, offer for sale, sell, and import the Accused Products without authorization from KWS.

55.     KWS has been and continues to be damaged by Gridworx's direct infringement of the '518 Patent. Gridworx's infringement has caused and continues to cause KWS to suffer lost sales, lost profits, lost market share, price erosion, and damage to its business relationships and goodwill.

56.     Unless enjoined by this Court, Gridworx will continue to directly infringe the '518 Patent, causing KWS irreparable harm for which there is no adequate remedy at law.

## COUNT II

### Patent Infringement Under 35 U.S.C. § 271(b)

57.     Plaintiff realleges and incorporates by reference its allegations in the preceding paragraphs as though fully set forth herein.

58.     Gridworx has induced and continues to induce infringement of one or more claims of the '518 Patent in violation of 35 U.S.C. § 271(b).

59.     Gridworx has actively and knowingly induced contractors, installers, distributors, building owners, developers, and end users to directly infringe the '518 Patent by installing, facilitating or directing the installation and use of, using, and selling the Accused Products in a manner that practices the claimed inventions of the '518 Patent.

60.     Gridworx's acts of inducement include, but are not limited to:

    a.  Providing detailed installation instructions, technical specifications, installation guides, and step-by-step directions that instruct customers how to install and use the Accused Products in an infringing manner;

    b.  Providing technical drawings, CAD files, and engineering specifications that show customers how to incorporate the Accused Products into wall assemblies in a manner that infringes the '518 Patent;

    c.  Offering installation support, technical assistance, and customer service to customers installing the Accused Products;

    d.  Training contractors, installers, and distributors on how to properly install and use the Accused Products;

    e.  Marketing and advertising the Accused Products by promoting their thermal isolation features and explaining how they reduce thermal bridging in the same

manner as the invention claimed in the '518 Patent;

f.  Providing warranties and quality assurance for installations of the Accused Products, thereby encouraging customers to install and use the products;

g.  Supervising, directing, or overseeing installations of the Accused Products on construction projects; and

h.  Continuing to promote, support, and encourage the use of the Accused Products despite actual knowledge since July 29, 2025, that such use infringes the '518 Patent.

61.    Gridworx's customers, contractors, installers, and end users have directly infringed and continue to directly infringe one or more claims of the '518 Patent by installing and using the Accused Products in accordance with Gridworx's instructions, specifications, and guidance.

62.    Gridworx has had actual knowledge of the '518 Patent since at least July 29, 2025, when KWS provided Gridworx with written notice of the patent and informed Gridworx that the Accused Products infringe the '518 Patent and that Gridworx's activities induce infringement by third parties.

63.    Gridworx has known or been willfully blind to the fact that its actions—including providing installation instructions, technical support, marketing materials, and promotional content—would induce and have induced direct infringement of the '518 Patent by third parties.

64.    Gridworx specifically intends that its customers, contractors, installers, and end users install and use the Accused Products in the manner described in Gridworx's installation instructions and technical specifications, which manner directly infringes one or more claims of the '518 Patent.

65.    Gridworx has taken active, affirmative steps to encourage, facilitate, and cause its

customers to install and use the Accused Products in an infringing manner. Gridworx's provision of detailed installation instructions, technical support, training, and promotional materials demonstrates Gridworx's specific intent to induce infringement.

66.     Despite having actual knowledge of the '518 Patent since July 29, 2025, engaging outside patent counsel to evaluate the matter, and receiving multiple notices from KWS regarding induced infringement, Gridworx has continued to provide installation instructions, technical support, marketing materials, and other inducing materials to its customers without modification or cessation.

67.     Gridworx's continued inducement of infringement with actual knowledge of the '518 Patent, after engagement with patent counsel, and after rejecting KWS' licensing proposal demonstrates that Gridworx's inducement has been knowing, willful, and in reckless disregard of KWS' patent rights.

68.     KWS has been and continues to be damaged by Gridworx's induced infringement of the '518 Patent. Gridworx's inducement has caused and continues to cause widespread infringement by third parties, resulting in lost sales, lost profits, lost market share, price erosion, and damage to KWS' business relationships and goodwill.

69.     Unless enjoined by this Court, Gridworx will continue to induce infringement of the '518 Patent by third parties, causing KWS irreparable harm for which there is no adequate remedy at law.

## COUNT III

### Tortious Interference with Prospective Business Relations

70.     Plaintiff realleges and incorporates by reference its allegations in the preceding paragraphs as though fully set forth herein.

71.    KWS had a reasonable probability of entering into a business relationship related to the Project. KWS was actively engaged in pursuing the opportunity, had provided a formal written proposal and pricing to the Subcontractor for the Project, and had ongoing communications with the Subcontractor regarding scope, schedule, and pricing. Based on these communications and the Subcontractor's expressed interest, KWS reasonably expected to be awarded the Project based on its cladding materials that practice the '518 Patent and the exclusive rights KWS has under the '518 Patent.

72.    Gridworx also pursued furnishing cladding materials to the Subcontractor for the Project that practice the '518 Patent without a license or authorization. Upon information and belief, the Subcontractor has contracted with Gridworx to purchase the Accused Products to be installed on the Project.

73.    By offering the Accused Products for sale to be used on the Project, without authorization from KWS and despite actual knowledge of the '518 Patent since July 29, 2025, Gridworx has and continues to intentionally interfere with KWS' prospective business relationship with the Subcontractor and the Project's awarding entity.

74.    By offering the Accused Products for sale to be used on the Project without authorization from KWS and despite actual knowledge of the '518 Patent since July 29, 2025, Gridworx acted with a conscious desire to prevent KWS from securing the Project, or, at a minimum, knew that interference with KWS's prospective relationship with the Subcontractor was certain or substantially certain to occur as a result of its conduct.

75.    Upon information and belief, at the time Gridworx agreed to furnish cladding materials to the Subcontractor, or at least since July 29, 2025, Gridworx had actual knowledge that it had no license, permission, or legal right to practice the '518 Patent and that its use of

KWS' patented methods would mislead the awarding entity into believing Gridworx could lawfully perform the work.

76.    Gridworx's conduct constitutes an independently tortious and unlawful act. Despite actual knowledge that it had no license, permission, or legal right to practice the '518 Patent, Gridworx offered the Accused Products for the Project and represented to, and/or knowingly failed to correct the impression held by, the Subcontractor and the Project's awarding entity that Gridworx could lawfully furnish cladding materials for the Project. Gridworx's misleading omissions and representations regarding its right to supply the Accused Products, and its failure to disclose that the Accused Products infringe the '518 Patent, would be actionable as fraudulent misrepresentation and/or fraudulent concealment under Texas law, and also constitute unfair or deceptive conduct intended to secure an economic advantage.

77.    Gridworx's wrongful conduct proximately caused the Subcontractor to select Gridworx rather than KWS for the Project, injuring KWS. But for Gridworx's unauthorized use of KWS' patented technology and its wrongful conduct described above, KWS would have had a reasonable probability of securing the contract as the only entity allowed to practice, make, use, and sell the '518 Patent.

78.    As a direct and proximate result of Gridworx's tortious interference, KWS has suffered damages, including lost revenue of at least $800,000 associated with the Project, lost profits, lost business opportunities, lost goodwill, and other consequential damages in an amount to be proven at trial.

79.    Gridworx's conduct was knowing, intentional, and malicious and/or fraudulent, entitling KWS to exemplary damages under Texas law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment as follows:

A. A declaration that Gridworx has directly infringed and continues to directly infringe one or more claims of U.S. Patent No. 9,732,518 under 35 U.S.C. § 271(a);

B. A declaration that Gridworx has induced and continues to induce infringement of one or more claims of U.S. Patent No. 9,732,518 under 35 U.S.C. § 271(b);

C. A preliminary and permanent injunction pursuant to 35 U.S.C. § 283 enjoining Gridworx, its officers, directors, agents, servants, employees, attorneys, affiliates, subsidiaries, and all persons acting in concert or participation with Gridworx, from:

   (i)    Further direct infringement of the '518 Patent, including making, using, offering for sale, selling, or importing the Accused Products or any other products that infringe the '518 Patent; and

   (ii)   Further induced infringement of the '518 Patent, including providing installation instructions, technical specifications, technical support, training, marketing materials, or any other materials or assistance that induce, encourage, or facilitate infringement of the '518 Patent by third parties;

D. An award of damages adequate to compensate KWS for Gridworx's direct infringement and induced infringement of the '518 Patent pursuant to 35 U.S.C. § 284, including without limitation lost profits, a reasonable royalty, and such other compensatory damages as are proven at trial, together with prejudgment and post-judgment interest from at least July 29, 2025;

E. Enhanced damages up to three times the amount of actual damages pursuant to 35 U.S.C.

§ 284 based on Gridworx's willful, deliberate, and reckless direct infringement and induced infringement of the '518 Patent after receiving actual notice on July 29, 2025, engaging outside patent counsel, requesting then rejecting licensing negotiations in bad faith, and continuing to infringe without taking any remedial action;

F.  An award of KWS' reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285 on the ground that this is an exceptional case due to Gridworx's willful direct infringement and induced infringement, bad faith conduct in licensing negotiations, and assertion of objectively baseless non-infringement defenses;

G.  An award of KWS' pre-suit and post-filing costs and expenses incurred in this action; and

H.  Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Knight Wall Systems, Inc. respectfully requests a trial by jury on all issues so triable.

DATED this 16th day of December 2025.

Respectfully submitted,

By: /s/ Daniel P. Withers

Daniel P. Withers
Texas State Bar No. 24125465
dwithers@mcguirewoods.com
Chelsea L. Hilliard
Texas State Bar No. 24068630
chilliard@mcguirewoods.com
**McGuireWoods LLP**
2601 Olive Street, Suite 2100
Dallas, Texas 75201
Telephone: 214.932.6400
Fax: 214.273.7470

Jessie L. Jessie L. Pellant
(pro hac vice to be filed)
Colorado Attorney Reg. No. 42096
jpellant@studioiplaw.com
Timothy M. Sullivan
(pro hac vice to be filed)
Minnesota Attorney Reg. No. 0391528
tsullivan@studioiplaw.com
Mark Emde
(pro hac vice to be filed)
Colorado Attorney Reg. No. 61755
memde@studioiplaw.com
Larissa M. Goodman
(pro hac vice to be filed)
Colorado Attorney Reg. No. 55222
lgoodman@studioiplaw.com
**STUDIOIP**
3000 Lawrence St.
Denver, CO 80205
Telephone: 303-563-5360

*Attorneys for Plaintiff*
Knight Wall Systems, Inc.

17

18